

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE NORTHERN TRUST COMPANY )
and AMERICAN CASUALTY )
COMPANY OF READING, PA, )
)
      Plaintiffs, )
)
    vs. )  No. 05 C 3370
)
MS SECURITIES SERVICES, INC., )
BEAR, STEARNS AND COMPANY, )
INC., and BEAR, STEARNS )
SECURITIES CORPORATION, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant wants information relating to plaintiffs' (Northern Trust or NT) claimed damages. NT thinks that much of the request is premature and that it is being asked for privileged and work product information. It is willing to come up with considerably more than it has, if defendants would be satisfied with that – but they would not be.

So, what is actually in dispute? NT seeks to place the emphasis on attorneys' fees, which are but a small part of the claim. A major part of the claim is, however, interest incurred before NT settled with the IRS, and defendants want to assess the reasonableness of the delay in settlement.

We turn first to the attorneys' fees, some $600,000. NT does not see why that cannot wait until after a liability ruling and, it claims, providing unredacted billing statements would (or might) reveal privileged information. We reject the contention that the matter can wait. Defendants are entitled to assess the strength of their defenses. And we could understand NT's concern over privilege if its attorneys sent out billing statements for time described, for example, as time spent developing an unmeritorious defense that can only buy time. But

lawyers do not bill like that. There is nothing protectable about the subject area being considered, the way it was considered (e.g. letter, brief, conferences with clients), the person providing the services, and the amount. That information should be provided. If, by chance, a bill discloses the substance of a communication, it can be redacted.

Information relating to settlement with the IRS is a bit more problematic. Defendants want everything relating to possible settlement, including any notes by NT counsel musing about possible settlement options. That goes too far. The subjective views of NT counsel are both work product and not particularly relevant, since the standard is objective (and privileged if communicated to NT). But defendants are entitled to know about the possibilities of settlement, as a way to mitigate damages, and the terms of the settlement ultimately reached. Therefore, they are entitled to know what NT told the IRS and what the IRS told NT. Perhaps that information is found only in privileged communications between NT and its counsel. If so, defendants are not entitled to the communications themselves, but they are entitled to the factual information contained in those communications. Indeed, NT's suggested procedures for providing such information appears to be an appropriate way to proceed and, indeed, apparently gives defendants more information that NT would otherwise be required to disclose.

Finally, settlement between NT and other brokerage entities are germane insofar as they involve any reimbursement of NT attorneys' fees.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 3, 2007.