IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NORTHERN TRUST COMPANY and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, <br><br> Plaintiffs, <br><br> vs. <br><br> MS SECURITIES SERVICES, INC., et al., <br><br> Defendants. | No. 05 C 3370 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs The Northern Trust Company and American Casualty Company ( "NT" or "plaintiffs") move for leave to amend their complaint. Additionally, they request that this court lift the discovery restriction put in place by an order dated June 30, 2006 ("June 30th order"). The Northern Trust Co. v. MS Securities, Inc., 2006 U.S. Dist. LEXIS 47176 (N.D. Ill., June 30, 2006). Defendants Bear, Stearns and Company, Inc., and Bear, Stearns Securities Corporation ("Bear" or "defendants") assert numerous reasons why plaintiffs' motion to amend should be denied. They further argue that plaintiffs have not alleged the good cause required for this court to expand discovery. For the following reasons, we grant plaintiffs leave to amend their complaint and grant their motion for discovery.

## BACKGROUND

NT, a securities lender, entered into a contract with Bear wherein NT would lend securities to Bear at Bear's request. NT and Bear entered into their first agreement on April, 12, 1982, and entered into a subsequent agreement on January 25, 1994. Both agreements

required that Bear deliver to NT 102% of the value of the security in collateral, and that Bear return to NT any and all "distributions made by the issuers of the Borrowed Securities during the term of the Loan." In addition, the 1982 agreement explicitly required Bear to comply with Regulation T, promulgated by the Federal Reserve Board, which limits the borrowing of securities to certain permitted situations such as covering short sales. 12 CFR 220.10. The 1994 agreement did not specifically mention Regulation T, but required that both parties "comply with all applicable laws and regulations, including those of applicable securities and financial regulatory and self-regulatory organizations."

From 1991-1996, Bear entered into a number of transactions with NT wherein it borrowed shares of a certain security, the Quest for Value Dual Purpose Fund ("QFV"). In each transaction Bear held the shares over the end of the year, making it the formal shareholder on the record date. In each transaction Bear paid NT the value of the short-term capital gains that QFV distributed to shareholders on the record date. However, QFV had elected to make a constructive distribution of its long-term capital gains, meaning that instead of paying out cash distributions, the fund paid taxes on the shares as if the shareholders had received a cash distribution, and then the shareholders were allowed a tax credit for their share of the taxes already paid. Bear claimed the tax credit and refused to pay NT the value of the constructive distribution and concomitant tax benefits arising from this arrangement. Bear claimed that the tax credits did not constitute "distributions" within the meaning of the Bear/NT contract and thus NT was not entitled to those funds. This litigation ensued.

Plaintiffs' complaint alleges that defendants breached the contract by failing to pay NT the tax benefits awarded Bear as the record-holder of the borrowed QFV shares. Plaintiffs subsequently sought discovery relating to Bear's third party transactions involving the QFV

shares. Plaintiffs contended that such discovery was relevant to the meaning of the disputed term "distributions." Defendants sought to prevent plaintiffs from obtaining such discovery, citing relevance and privacy concerns. We agreed with defendants that such discovery was premature absent a *prima facie* showing that tax credits did constitute distributions, or a showing that there was some good cause for such discovery, in which case we would permit limited discovery to determine relevance. However, we denied defendants' motion for a blanket protective order because we held that there may be certain scenarios that would warrant such discovery would be warranted.

Plaintiffs seek to amend their complaint to add an additional theory to their breach of contract claim. They now claim that defendants breached the contract by violating Regulation T. Plaintiffs allege that, through the limited discovery so far conducted, they have gained information that all of defendants' transactions involving the borrowed shares were entered into with one party, Mr. Robert Gordon, a non-party whose name has arisen often during the course of this litigation. *See* Northern Trust, 2006 U.S. Dist. LEXIS 47176, *8 n.2. Plaintiffs claim that these transactions violated Regulation T because they were not borrowed for a permitted purpose, such as to cover short sales, but solely so that Gordon and Bear could take advantage of the tax credits given by QFV to the owner on the record date.

Plaintiffs further request that this court lift its earlier-imposed discovery limitation. They claim that they have made the required prima facie showing that tax credits qualify as distributions. They point to the declaration of Ralph Vitale, the former Executive Vice President for Securities Finance of State Street Bank, and the Bond Market Association's 2000 Master Securities Loan Agreement Guidance Notes. They also claim that they have independently shown good cause for the discovery, providing this court with documents which

they purport demonstrate that all of the shares borrowed by Bear were subsequently delivered to Gordon. Finally, they allege that if this court permits them to amend their complaint to include the Regulation T allegations, this gives rise to an additional independent basis for the requested discovery.

## ANALYSIS

### Amendment

After a responsive pleading has been served upon a party, that party may amend its pleadings by leave of court or by written consent of the adverse party. Leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15. Courts may deny leave to amend only where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); Perrian v. O'Grady, 958 F.2d 192, 193 (7th Cir. 1992).[1]

Defendants argue that plaintiffs' amendment should be denied because of undue delay, undue prejudice and futility of the proposed amendment.

### Undue Delay

Defendants first argue that plaintiffs unduly delayed in the filing of their amended complaint. They claim that the transactions complained of occurred up to 15 years ago and that plaintiffs sought payment of the tax credits as far back as 1998. But at that time plaintiffs and defendants entered into a tolling agreement, and then plaintiffs entered into litigation with

---

[1] As defendants do not object to plaintiffs' filing of an amended complaint to the extent that it removes other defendants with whom plaintiffs have settled, and claims that have previously been dismissed, we grant, without discussion, plaintiffs leave to so do.

the IRS over the same transactions. Plaintiffs first filed their complaint a year ago; discovery has not been completed and no dates have been set for dispositive motions. This is certainly not the kind of serious and unjustifiable delay that would compel this court to deny leave to amend. *See* Profile Racing v. Profile For Speed, 1995 U.S. Dist. LEXIS 13187 (N.D. Ill. Sept. 11, 1995).

Defendants next argue that the information upon which plaintiffs base their new allegations was in NT's possession before the case was filed, and thus plaintiffs could have made these allegations in their original complaint. Plaintiffs claim that their amendment is based on a document produced by Bear in discovery that lists all of the QFV shares borrowed by Bear from different lenders, including NT, during the relevant time period, broken down by each individual transaction. Defendants argue that plaintiffs already had this information and produced it to defendants during discovery. Defendants point to a similar document that lists all of the shares NT lent to various brokers, including Bear, during the relevant time period. The difference (besides perspective) is that NT's list is not broken down into individual transactions, but merely by year, so where the Bear document lists transactions of 328,500 and 471,500 shares for 1993-1994, the NT document lists the total number of shares, or 800,000. We agree that plaintiffs were in possession of the information prior to seeking leave to amend their complaint, and that all that was needed was a little math in order to parse out the transactions and make the comparison to the Bear/Gordon transaction document. However, because this case is still in its early stages, with discovery still incomplete, and because we find below that defendants will not be unduly prejudiced by this amendment, plaintiffs' delay does not warrant denial of leave to amend.

Undue Prejudice

Defendants argue that granting plaintiffs leave to amend their complaint would result in undue prejudice to defendants. They claim that they lacked notice of the possibility of this new claim because plaintiffs never intimated, either in NT's letters requesting payment or in the early stages of this case, that they believed Bear violated Regulation T. They argue that without such notice they were forced to conduct discovery differently than they otherwise might have. However, defendants cannot claim surprise by plaintiffs' new theory, since in their response to defendants' motion to dismiss filed on November 17, 2005, plaintiffs stated they suspected Bear was engaging in transactions violating Regulation T. Defendants have not made a sufficient showing of undue prejudice warranting a denial of plaintiffs' motion.

<u>Futility</u>

Finally, defendants argue that plaintiffs' amendment would be futile. A proposed amendment is deemed futile when its claims cannot withstand a motion to dismiss. <u>GE Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d 1074, 1085 (7th Cir. 1997). Defendants claim that to plead a breach of contract in Illinois, plaintiffs must allege the existence of a valid contract, breach, causation and damages. Defendants argue that plaintiffs have failed to plead two of these elements: breach and causation. Illinois case law more explicitly lays out the elements that must be plead for a breach of contract claim. They are "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." <u>Gallagher Corp. v. Russ</u>, 309 Ill. App. 3d 192, 199 (Ill.App.Ct. 1999). Plaintiffs have sufficiently alleged each element.

Defendants argue that plaintiffs have not alleged an injury to the QFV funds. We disagree. Plaintiffs have alleged that Bear's violation of Regulation T prohibited them (and in turn their pension clients) from claiming the tax credit they allege they were entitled to, and

caused them to lose millions of dollars that would otherwise have been distributed to the funds as a result of those credits. Defendants argue that even if plaintiffs have alleged injury, they cannot sufficiently allege that Bear's violation of Regulation T caused plaintiffs' injury. Defendants attempt to emphasize their point by laying out various scenarios of borrowers harming the fund without violating Regulation T, and borrowers violating Regulation T without harming the fund. These scenarios are unavailing as, at this stage, we must take all of plaintiffs' well-pleaded allegations as true. Flanagan v. Allstate Ins. Co., 2007 U.S. Dist. LEXIS 39638 (N.D. Ill. May 3, 2007). Plaintiffs have sufficiently alleged a purpose that is directly related to the harm they claim to have suffered. Defendants argue that plaintiffs have alleged only "but-for" causation, and not the "proximate" causation required under Illinois law. But at this stage plaintiffs are only required to allege that their injury resulted from defendants' breach. This they have done. They have alleged that defendants violated Regulation T by borrowing funds for an impermissible purpose, that purpose being to capture the tax credits that would accrue on the record date. Plaintiffs' claimed injury followed. Therefore, plaintiffs' have sufficiently alleged the elements of a breach of contract.

Defendants argue that plaintiffs' amendment is futile because other courts have upheld tax arbitrage schemes, such as the one here, as not being sham transactions, and therefore not violative of Regulation T. First, we note that the cases defendants cite deal with the status of such transactions under the tax code, not Regulation T, which is a securities regulation. IES Industries, Inc. v. United States, 253 F.3d 350 (8th Cir. 2001); Compaq Computer Corp. v. Commissioner of Internal Revenue, 277 F.3d 778 (5th Cir. 2001). Second, and more importantly, defendants' arguments deal with issues of fact, not law. Defendants' own cases demonstrate that an inquiry into the nature of a transaction (under the two-part test used in

IES and Compaq) is a factual one: the objective question of whether the transactions are without economic substance and the subjective question of whether they are motivated by an economic purpose outside of tax considerations. Similarly, the determination of whether the transactions at issue here complied with the requirements of Regulation T is a factual one, and not one we can resolve here.

Defendants claim that Regulation T does not govern transactions such as the one at issue here because the opinions issued by the Federal Reserve and the decision of the SEC only discuss situations where the broker, as opposed to the customer of the broker, sought to retain the benefit accrued by holding the stock over the record date. *See* In re Shearson Lehman Brothers Inc., S.E.C. Release No. 34-31196, 52 S.E.C. Docket 1454, 1992 WL 236041 (Sept. 17, 1992); Fed. Reserve Staff Op., 1984 Fed. Res. Interp. Ltr. LEXIS 22 (1984); Regulation T (Rulings and Opinions), FRRS 5-615.1 (Oct. 2006). Defendants argue that this is the only time such transactions are prohibited and that Regulation T does not apply to situations where, as here, the customer is allegedly the one obtaining the benefit. The authorities cited by plaintiffs, while only discussing this single scenario, do not specifically place any such limitation on prohibited transactions. Furthermore, even if Shearson is limited to benefits accrued by brokers, plaintiffs' amendment survives because they have not plead that these transactions were solely for Gordon's benefit. Plaintiffs' broad allegations permit this court to infer that Bear benefitted in some way as well.[2] Therefore, regardless of whether Shearson covers benefits to customers as well as brokers, plaintiffs have sufficiently alleged that Bear violated

---

[2] Plaintiffs allege that "[t]he purpose of [the QFV] transactions appears to have been to divert the value of the tax payment QFV made on behalf of its shareholders... ." Plaintiffs further allege that "Bear Sterns' scheme in borrowing QFV shares for use in transactions involving Mr. Gordon for the purpose of diverting the value of the Tax payment QFV made on behalf of shareholders violated Regulation T and Bear Stearns' express and implicit contractual pledges to obey that regulation."

Regulation T.

Next, defendants argue that plaintiffs have failed to state a claim because the 1982 and 1994 contracts did not require Bear to comply with Regulation T. While we take the allegations in plaintiffs' complaint as true, a copy of any written instrument that is an exhibit to a complaint is considered to be a part of the pleadings (Fed.R.Civ.P. 10(c)), and, as a general principle, when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 991 (7th Cir. 1999).

The 1982 agreement states, in pertinent part: "Each time that securities are loaned under this Agreement, the Borrower represents that (a) the Borrowed Securities will be used solely for purposes permitted by Section 6(h) of Regulation T of the Board of Governors of the Federal Reserve System... ." Defendants argue that we are to interpret this clause to mean only that Bear was required to *represent* to NT that it was borrowing securities for a permissible purpose, not that it actually *was* borrowing them for such purpose. As plaintiffs correctly point out, defendants cite no support for this argument, and we find such a position untenable.

Defendants further argue that even if the 1982 agreement requires them to comply with Regulation T, there is no such requirement in the 1994 agreement because there is no such clause in that agreement. Again we disagree. The 1994 agreement states in pertinent part: "Each party hereto represents and warrants that the execution, delivery and performance by it of this Agreement and each Loan hereunder will to its knowledge comply with all applicable laws and regulations, including those of applicable securities and financial regulatory and self-regulatory organizations." While Regulation T is not specifically mentioned, it can be inferred

that Regulation T is a regulation of an applicable securities or financial regulatory organization.

Defendants argue that there is no implied right of action for a violation of Regulation T, citing <u>Bassler v. Central Nat'l Bank</u>, 715 F.2d 308, 310 (7th Cir. 1983) and <u>Russo v. Bache Halsey Stuart Shields, Inc.</u>, 554 F. Supp. 613 (N.D. Ill. 1982). But as plaintiffs point out, they are not attempting to enforce Regulation T. They are claiming that Bear breached its contract by violating Regulation T, when compliance with that regulation was a term of the contract. Thus, the fact that there is no implied private right of action is not a barrier to plaintiffs' claim.

We find that all of defendants' arguments fail and that plaintiffs have sufficiently alleged a breach of contract claim based on a violation of Regulation T and are permitted to amend their complaint to reflect this new claim.

<u>Discovery</u>

Plaintiffs request that this court lift the limitation on discovery put in place by the June 30th order. Plaintiffs contend that they are able to make a *prima facie* showing that the term "distribution" includes tax credits. They further contend that they have made an independent showing of good cause for the discovery. Finally, they allege that such discovery necessarily follows from their amended allegations, which we have permitted them to file.

Rule 26 permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." It further states that "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action," and that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." We agree with plaintiffs that

discovery of Bear's transactions with Mr. Gordon and Twenty-First Securities is relevant to whether or not Bear breached the contract by violating Regulation T through its borrowing of securities from NT.

Furthermore, good cause is determined through a balancing of the "interests of the party seeking information with those of the party from whom information is sought." Northern Trust, 2006 U.S. Dist. LEXIS 47176, *3 citing Wiggins v. Burge, 173 F.R.D. 226, 229 (N.D. Ill. 1997). Here, plaintiffs have demonstrated their need to obtain the discovery in question as it relates to their newly amended claims. Plaintiffs have also demonstrated the likelihood that all the transactions in question revolve around a single non-party from whom discovery is sought. Defendants have not refuted plaintiffs' allegations that Mr. Gordon was involved in all of the Bear-NT transactions. Thus, Bear's concerns for the privacy of its customers is generally assuaged, as only one customer is implicated in the requested discovery. Since plaintiffs have shown both good cause and relevance, we lift the discovery restriction as it pertains to Bear's third party transactions with Gordon and/or Twenty-First Securities.[3]

Plaintiffs have not claimed that any other customers were involved in the alleged "scams" and thus we do not find there to be any need at this time to permit broader non-party discovery. If upon review of the permitted discovery, plaintiffs can make a showing that their allegations reach further than Mr. Gordon and/or Twenty-First Securities, we will again take up the issue for review. In addition, prior to engaging in discovery, the parties are to confer and submit to this court a suitable protection order to protect the privacy of the non-party at issue.

---

[3] Because we find that plaintiffs' amended complaint permits it to engage in the discovery it seeks, we do not address whether or not plaintiffs have made a *prima facie* showing that tax credits constitute distributions, as that term is defined in the contract.

## CONCLUSION

For the foregoing reasons we grant plaintiffs leave to file an amended complaint and lift the limitation on discovery to permit discovery relating to Bear's third party transactions with Gordon/Twenty-First Securities.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 13, 2007.