HHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NORTHERN TRUST COMPANY and AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,<br><br>Plaintiffs,<br><br>vs.<br><br>MS SECURITIES SERVICES, INC., et al.,<br><br>Defendants. | No. 05 C 3370 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs The Northern Trust Company and American Casualty Company ("NT" or "plaintiffs") move this court to compel defendants Bear, Stearns and Company, Inc. and Bear Stearns Securities Corporation ("Bear" or "defendants") to disclose the identities of Bear Stearns customers who participated in certain transactions. They also request permission to issue subpoenas to four parties involved in those transactions.

### BACKGROUND

The background of this litigation, which is recounted in more detail in our earlier opinion, Northern Trust Co. v. MS Securities, Inc., 2006 WL 695668 (N.D. Ill. Mar. 15, 2006), may be summarized as follows: NT entered into a contract with Bear wherein NT would lend securities to Bear in exchange for a set fee. NT and Bear entered into their first agreement on April 12, 1982, and entered into a subsequent agreement on January 25, 1994. Both agreements required that when Bear returned the shares to NT it would also return any and all "distributions made by the issuers of the Borrowed Securities during the term of the Loan."

In addition, the 1982 agreement explicitly required Bear to comply with Regulation T, promulgated by the Federal Reserve Board, which limits the borrowing of securities to certain permitted situations such as covering short sales. 12 C.F.R. § 220.10. The 1994 agreement did not specifically mention Regulation T, but required that both parties "comply with all applicable laws and regulations, including those of applicable securities and financial regulatory and self-regulatory organizations."

From 1991-1996, Bear entered into a number of transactions with NT wherein it borrowed shares of a certain security, the Quest for Value Dual Purpose Fund ("QFV"). Each transaction was timed to occur over the end of the year, making Bear the formal shareholder on the record date. As the record shareholder, Bear received certain tax credits from QFV. Bear did not reimburse NT for the value of the credits because it claimed that the tax credits did not constitute "distributions" within the meaning of the Bear/NT contract. Plaintiffs sued, alleging that defendants breached the contract by failing to reimburse NT for the value of the tax benefits.

As part of discovery, plaintiffs sought information relating to Bear's third party transactions involving the QFV shares. They contended that such discovery was relevant to the meaning of the disputed term "distributions." Defendants sought to prevent plaintiffs from obtaining such discovery, citing relevance and privacy concerns. We agreed with defendants that such discovery was premature absent a *prima facie* showing that tax credits did constitute distributions, or a showing that there was some good cause for such discovery, in which case we would permit limited discovery to determine relevance. But we denied defendants' motion for a blanket protective order because we held that there may be certain scenarios that would warrant such discovery.

We later granted plaintiffs leave to amend their complaint, to add an additional theory

to their breach of contract claim, that defendants breached the contract by violating Regulation T. Plaintiffs alleged that through their initial discovery they gained information that all of defendants' transactions involving the borrowed shares were entered into with one party, Mr. Robert Gordon, a non-party whose name has arisen often during the course of this litigation. *See* Northern Trust, 2006 WL 1843369, *3 n.2 (June 30, 2006). Plaintiffs claimed that these transactions violated Regulation T because they were not borrowed for a permitted purpose, such as to cover short sales, but solely so that Gordon and Bear could take advantage of the tax credits given by QFV to the owner on the record date. At the same time we granted plaintiffs' request to lift the discovery restriction as it pertains to Bear's third party transactions with Gordon because it was relevant to the Regulation T claim. But the plaintiffs did not claim that any other customers were involved in the alleged violations of Regulation T, so we found no reason to permit broader third party discovery.

Plaintiffs now move the court to authorize and compel further limited discovery into Bear's third party transactions. They argue that the discovery they have taken since we allowed them to amend their complaint shows that Bear Stearns itself, and a management employee at Bear Stearns, were also participants in the tax arbitrage scheme. Further, they contend that other third parties were in reality closely related to Bear and Mr. Gordon. Plaintiffs argue that this demonstrates the need to examine the entire list of Bear customers who were involved in the QFV transactions. Defendants assert that this motion is merely an attempt to keep fact discovery open long enough to find a viable theory for trial. They further contend that NT has known of the existence of the requested discovery since early in this litigation and has chosen to wait until now to seek it in an attempt to delay the closing of fact

discovery.[1] They argue that NT has failed to show good cause because its own lack of diligence is the reason for delay.

## ANALYSIS

Rule 26 permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26. It further states that "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* As we have previously stated, good cause is determined through a balancing of the "interests of the party seeking information with those of the party from whom information is sought." Northern Trust, 2006 WL 1843369, *2 (June 30, 2006).

We are satisfied that NT has shown good cause for limited further discovery. NT has not made this current discovery request out-of-the-blue. It has essentially attempted to obtain this information or information similar to it from the early stages of this litigation, but we were not convinced that the information was relevant. In July 2007, when we granted NT leave to amend the complaint to add the Regulation T claim, we noted that "[i]f upon review of the permitted discovery, plaintiffs can make a showing that their allegations reach further than Mr. Gordon and/or Twenty-First Securities, we will again take up the issue for review." That scenario has now come to pass.

It also does not appear that NT has engaged in dilatory tactics regarding this discovery. The requested information was excluded from discovery until July 2007, when the court allowed limited third party discovery. So the question of delay applies only from that point

---

[1] Defendants' brief characterizes NT's motion as an attempt to re-open fact discovery. But NT's motion was filed on December 7, 2007, before the scheduled close of fact discovery on December 21, 2007. At the December 11, 2007, motion hearing we confirmed that the briefing schedule for this motion, which extended beyond the close of fact discovery, was without prejudice. We thus re-characterize Bear's argument as attempt by NT to delay the completion of discovery and not as an attempt by NT to re-open discovery.

forward. While it appears that discovery has proceeded at a slow place since July, neither party specifically accuses the other of purposeful delay. We note that the deposition of Mr. Gordon was not completed until November 27 or 29 (the parties cannot agree which), and that two other depositions of Bear employees involved in the QFV transactions were not completed until December 4 and 5, 2007. NT filed the instant motion two days later.

Furthermore, NT identifies specific limited discovery that it proposes could be substantially completed before the scheduling conference on February 12, 2008. Because the final pre-trial order has not issued, we fail to see any undue prejudice on the defendants. This is true particularly in light of the fact that Bear has recently received permission from the court to take two depositions outside the December 21 fact discovery cut-off.

At the December 11 hearing on this motion, we ordered the parties to brief, on an abbreviated schedule only the issue of whether NT is procedurally entitled to further discovery. We informed the parties that if we determined NT is entitled to further discovery, that we would order further briefing on whether the requested discovery was appropriate. In order to move this litigation forward, we set the following abbreviated briefing schedule for the merits of the requested discovery: defendants shall respond to plaintiffs' original motion by January 28, 2008. Plaintiffs shall reply by February 7, 2008. The parties are cautioned to discuss only the merits of the proposed discovery and should refrain from commenting on each other's rhetoric.

JAMES B. MORAN
Senior Judge, U. S. District Court

Jan. 18, 2008.